UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BRETT DENSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-44-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Brett Denson brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB).  The Court, having reviewed the record and for the reasons set forth herein, will deny Denson's Motion for Summary Judgment [R. 12] and grant the Commissioner's [R. 13].

I

Denson filed an application for DIB on August 24, 2011. [Transcript (Tr.) 148].  He alleges a disability beginning on May 24, 2011, due to back pain stemming from herniated discs in his lumbar spine. [*E.g.*, Tr. 61].  Denson's applications were denied initially and upon reconsideration [Tr. 68, 81].  Subsequently, at Denson's request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Don C. Paris on March 14, 2013. [Tr. 34-56]. During the hearing, the ALJ heard testimony from Denson and vocational expert (VE) Tina Stambaugh. [*Id.*]  Denson, who was forty-seven years old at the time of the hearing, has a GED and has past work experience as a welder.  [Tr. 39-41].  Although the VE testified that Denson

could no longer perform that past work, she found that there are jobs that exist in significant numbers in the national economy that Denson could perform, and the ALJ accepted that testimony. [Tr. 52-55].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Denson has not engaged in substantial gainful activity since May 24, 2011, the alleged onset date. [Tr. 22]. At Step 2, the ALJ found that Denson had the following severe impairments, all of which relate to his spine: status post large

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

recurrent right posterior inferior lateral extrusion at L5-S1 vertebrae, status post right L5-S1 microdiscectomy and status post revision at L5-S1 and laminectomy. [Tr. 22]. At Step 3, the ALJ found that Denson's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 14-15]. At Step 4, the ALJ determined that Denson has the residual functional capacity (RFC) to perform a range of light work, with certain limitations. [Tr. 24-27]. The ALJ found that Denson is unable to perform any his past work. [Tr. 27]. However, at Step 5, the ALJ relied on the testimony of the VE to find that, based on Denson's residual functional capacity, there are jobs that exist in significant numbers in the national economy that Denson could perform. [Tr. 28]. Accordingly, on March 18, 2013, the ALJ found that Denson was not disabled and was therefore ineligible for DIB. [Tr. 29]. The Appeals Council declined to review the ALJ's decision on March 21, 2013 [Tr. 1-3] and Denson now seeks judicial review in this Court.

II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

## A

Denson first argues that ALJ Paris improperly discounted the opinion of his treating specialist and his treating primary care physician without providing adequate reasons for doing so.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 529-530 (6th Cir. 1997) (citing *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  Under 20 C.F.R. § 404.1527(d)(2), however, a treating source's opinion on the issues of the nature and severity of a claimant's impairments will not be given controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).  "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the

4

frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Id.* at 544. Further, an ALJ is required to give "good reasons" for not giving weight to opinions from the treating physician in a disability determination. 20 C.F.R. § 404.1527(d)(2). The purpose of this requirement is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also Gayheart v. Comm'r of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).

1

Dr. John Guarnaschelli, a neurosurgeon, was Denson's treating specialist. Denson was referred to Dr. Guarnaschelli for his "recurrent chronic low back pain." [Tr. 236]. Prior to their first office visit, Denson underwent an MRI scan on May 27, 2011, which revealed evidence of disc degeneration and herniation, most particularly at the L5-S1 vertebrae level, where Dr. Guarnaschelli noted that a herniation "with an obvious free disk [sic] fragment, both superiorly and inferiorly, [was] compressing the S1 nerve root." [Tr. 236; *see* Tr. 262, 268]. Dr. Guarnaschelli noted that this corresponded with Denson's symptoms, which reflected "clear cut evidence of a painful right lumbar radiculopathy." [Tr. 236]. During that pre-surgery visit, Dr. Guarnaschelli also noted that Denson's gait and stance were abnormal. [Tr. 237].

Dr. Guarnaschelli conducted a L5-S1 microdiscectomy surgery on June 10, 2011. [Tr. 255]. In his post-surgery office visit records, Denson reported some continued discomfort in his back, [Tr. 288]. However, Guarnaschelli emphasized that although there was "stiffness in the

back," there were "no radicular symptoms," and Guarnaschelli noted that plain x-rays "show[ed] no evidence of instability." [Tr. 233 (July 14); *see also* Tr. 279 (September 27, 2011)]. As such, Dr. Guarnaschelli noted that only conservative measures, including steroid epidural blocks, were warranted in Denson's post-operative treatment. [*See id.*; *see also* Tr. 277]

After Denson continued to report pain in October and November, MRI tests were ordered. The MRIs revealed a "tiny residual or recurrent right subarticular disc extrusion . . . along the . . . S1 nerve root." [Tr. 303, 325]. Office notes at this time indicate that Denson was walking with a limp, [Tr. 419], and Guarnaschelli noted a "tentative diagnosis . . . of recurrent or residual right L5-S1 disk herniation." [Tr. 392]. Dr. Guarnaschelli therefore performed a second surgery on December 8, 2011. [Tr. 320].

Guarnaschelli's post-operative office visit notes from February 28, 2012 report that Denson had "completely [sic] relief of his leg [pain] symptoms following surgery," but Denson claimed during the visit that his physical therapy regimen had worsened his back pain. [Tr. 476]. Dr. Guarnaschelli emphasized that "conservative [treatment] measures are warranted at this point" based on the x-rays, MRI scan, and blood work, and noted that he hesitated to place Denson "on any narcotics that could be addictive or toxic." [Tr. 476]. Later, on April 10 and May 8, Denson's condition appeared to improve, and significantly, Guarnaschelli noted that Denson would be "capable of returning to routine activities or work at this point." [Tr. 474 (reporting that Denson stated that "overall, . . . he is doing quite well"); Tr. 473 ("Overall, he is better.")]. On June 19, 2012, however, Guarnaschelli's notes report that Denson said his pain was getting worse again, and he inquired about a referral to a pain management physician, though Guarnaschelli reiterated that only conservative treatment measures were warranted and that no further surgical intervention was necessary. [Tr. 470].

6

During the recovery period after the second surgery, Guarnaschelli responded to a medical questionnaire on March 30, 2012, during the course of Denson's recovery from the second surgery. [Tr. 374-79]. The first of these checkmark forms considered the "Physical Effects of Pain." [Tr. 374]. Dr. Guarnaschelli indicated that there was "a medical basis for [Denson's] pain" because "patient underwent surgery on 12/8/11." [*Id.*] When asked whether Denson's pain was "disabling to the extent that it would prevent the patient from working full time at even a sedentary position," Dr. Guarnaschelli checked "yes," with the added handwritten rationale "Patient is off work." [*Id.*] He also checked boxes indicating that Denson had "limitation of motion of the spine," "severe burning," "painful dysestheia," and "need to change position or posture more than once every 2 hours." [Tr. 375]. Although the questionnaire contained four signature lines, Dr. Guarnaschelli only signed in two places. One of the four forms was not filled out because, as handwritten notations indicated, Denson was "off work" at the time. [Tr. 378-79].

ALJ Paris accorded two of the four forms containing Dr. Guarnaschelli's medical questionnaire responses no weight because they required only checkmarks and were undated and unsigned, leaving him unable to determine whether Dr. Guarnaschelli himself completed the forms. [Tr. 27]. Denson does not rely on or cite to opinions from those forms in his brief. Rather, he relies heavily on Dr. Guarnaschelli's response indicating that Denson's condition is "disabling" and prevents him "from working full time at even a sedentary position," as well as checkmarks next to certain pain symptoms on the following page of the questionnaire. [Tr. 374-75]. The form containing these opinions was signed and dated. [Tr. 374]. ALJ Paris expressly gave the former statement "little weight" because it was formed based on Denson's condition during his recovery period three months after his surgery. [Tr. 27].

7

ALJ Paris' rationale in rejecting Dr. Guarnaschelli's statements relating to Denson's work capacity is sound. The nature and extent of the treating relationship between Denson and Dr. Guarnaschelli was largely confined to surgery and post-surgery recovery. *See Wilson*, 378 F.3d at 544. This opinion questionnaire was completed a mere three months after Denson's December 2011 surgery, while – as office visit records note – Denson was still recovering. [*See* Tr. 478 (February 21, 2012) (noting recurrences of pain while in physical therapy); accord Tr. 476 (February 28, 2012)]. The opinion was, in essence, simply a snapshot of Denson's pain symptoms and ultimate functional capacity taken in the relatively-acute recovery stages from surgery, and it provides little credible evidence about Denson's day-to-day condition outside of surgical recovery. Indeed, Dr. Guarnaschelli's treating relationship did not, for the most part, continue beyond the recovery stage. Denson was first seen immediately prior to his first surgery in June 2011, and shortly after this March 2012 questionnaire, Denson began predominantly seeing a pain specialist for more aggressive treatment rather than the "conservative measures" that Dr. Guarnaschelli felt were warranted. [*E.g.*, Tr. 485; Tr. 495-509]. It was therefore reasonable for ALJ Paris to discount this component of Dr. Guarnaschelli's questionnaire opinion on this basis.

Even if this were not enough, to the extent that this statement draws a conclusion about Denson's ultimate functional capacity – it opines that the patient's pain is "*disabling* to the extent that it would prevent the patient from working full time at even a sedentary position" – it invades the province of the Commissioner. [Tr. 374 (emphasis added)]. "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(1)). As a result, "[n]o special significance [is] given to opinions of disability, even

8

if they come from a treating physician." *Id*. (citing 20 C.F.R. § 404.1527(e)(3) (2006); SSR96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34471, 34473 (Soc. Sec. Admin. July 2, 1996)) (internal quotation marks omitted). Dr. Guarnaschelli's checkmarked assent to this assertion about Denson's ultimate disabled status cannot be a medical opinion, but is instead a determination of disability, which is reserved to the Commissioner. Even if ALJ Paris' stated rationale were not enough by itself to amount to a "good reason" to discount Dr. Guarnaschelli's opinion, this additional ground for affording little weight to Dr. Guanaschelli's opinion is sufficient to preclude remand on this basis.

2

Denson also suggests that ALJ Paris improperly decided to give little or no weight to the opinion of his treating primary care physician, Dr. Edward Sames. The sole opinion Dr. Sames provided is in an office visit note from January 16, 2013, in which he states, "Patient is currently disabled due to chronic low [back] pain, neck pain and radiculopathy symptoms. He is not able to return to his previous occupation which required climbing, pulling, pushing, bending, stooping, squatting activities, and use of the back." [Tr. 487]. The treating source rule applies only to medical opinion evidence – not to all objective evidence provided by a physician. ALJ Paris provided good reasons for discounting this sole opinion evidence from Dr. Sames. First, he expressly noted that this comment about Denson's ultimate work functionality or disabled status could not be given controlling weight since that is a determination left exclusively to the province of the Commissioner. [Tr. 26]. Again, because "[t]he responsibility for determining a claimant's residual functional capacity rests with the ALJ . . .," "[n]o special significance [is] given to opinions of disability, even if they come from a treating physician." *Poe*, 342 F. App'x

at 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(1), (3) (2006). ALJ Paris properly refused to give significant weight to this aspect of Dr. Sames' opinion on this ground.

ALJ Paris also explained that he would give little weight to the remainder of Dr. Sames' opinion because Dr. Sames is a primary care physician who employs Denson's wife and "his findings appear based upon subjective complaints of pain and a personal relationship with the claimant and his family rather than objective medical evidence." [Tr. 26]. While ALJ Paris' statement suggests that he rejected the opinion based on perceived bias, it also indicates that he considered the opinion inconsistent with the objective medical evidence. A review of Dr. Sames' treatment notes supports that reasoning. The record contains only two treatment notes from Dr. Sames: one from June 2012 [Tr. 457-60] and one from January 2013 [Tr. 485-87]. Dr. Sames' objective medical evidence does not support the notion that Denson was unable to perform *any* job. In June 2012, Dr. Sames noted that Denson had a "normal gait," and despite some pain with positional changes, he was able to perform positive straight leg raises with his right leg and equivocal straight leg raises with his left. [Tr. 458]. He also had normal strength and tone in the area of his back addressed in his surgeries (lumbosacral spine), as well as in his neck (cervical spine). [*Id.*] Dr. Sames noted a more restricted range of motion in Denson's lumbosacral spine in his office notes from January 2013, but his findings were not significantly different at that time. [Tr. 486]. Dr. Sames' objective medical evidence supports the ALJ's conclusion that – contrary to Dr. Sames' comments about a total disability – Denson is capable of light exertional activity.   The ALJ's decision to give less weight to Dr. Sames' opinion was therefore properly supported.

3

Denson next complains that the ALJ "inexplicably" gave the opinion of state agency

medical consultant Dr. Timothy Gregg "great weight" rather than the opinions of his treating physicians. [Pl. Mot. Summ. J., R. 6-1 at 7]. However, the Court has determined that the ALJ reasonably weighed the opinion evidence from his treating physicians and gave good reasons for affording them less weight. ALJ Paris gave great weight to Dr. Gregg's opinion because it was better supported by "the weight of the medical evidence including the claimant's progress as reflected in the medical records and improvement following surgery." [Tr. 27]. A review of the record shows that substantial evidence supports this conclusion. Although Denson intermittently indicated that his pain was worsening after his second surgery, his post-surgery treatment notes also demonstrate some self-reported improvements, [Tr. 474, 473], "normal gait," [Tr. 458], and at least equivocal range of motion in his lumbosacral spine, [Tr. 458]. The Sixth Circuit has "consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). It has also recognized that "in appropriate circumstances, opinions from state Agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Helm v. Comm'r of Social Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting Social Sec. Ruling 96-6p, 1996 WL 374180 (1996)). The ALJ reasonably determined that, unlike the opinions of Dr. Guarnaschelli and Dr. Sames, the opinion of Dr. Gregg was supported by the weight of the objective medical evidence in the record. The ALJ's decision to afford great weight to that opinion was therefore supported by substantial evidence.

B

Finally, Denson also suggests that the ALJ failed to properly take his subjective allegations of pain into account. In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, ALJ's employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Rogers*, 486 F.3d at 247 (citations omitted). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

ALJ Paris cited this test and determined that while "the claimant's medically

12

determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." [Tr. 25]. First, the ALJ noted that Denson's statements were inconsistent with some of his statements in the medical evidence. ALJ Paris pointed out that after his second surgery, Denson reported improved leg pain but claimed continued back pain that was, according to Dr. Guarnaschelli, unexplained by imaging. [Tr. 470 (noting that based on objective tests, no further surgical intervention was necessary). He also noted that, despite Dr. Guarnaschelli's advice that only conservative treatment measures were warranted based on those objective tests, Denson sought more aggressive treatment pain management. [*E.g.*, Tr. 485; Tr. 495-509]. Indeed, as has been noted, Dr. Sames reported that Denson had a "normal gait" in June 2012 [Tr. 458], and at least equivocal range of motion in his lumbosacral spine, [Tr. 458], and Denson intermittently reported improvement in his condition following surgery, [Tr. 474, 473]. Second, ALJ Paris noted that Denson's daily activities belied his subjective allegations. Denson testified at the hearing that he was able to regularly drive – and get in and out of – his pickup truck, perform simple household chores, cook, and satisfy his personal care needs. [Tr. 38, 172-74]. It was reasonable for the ALJ to find that these daily living activities reflected on Denson's credibility. Based on these considerations, the ALJ's determination that Denson was not as limited by his impairments as he alleged was supported by substantial evidence.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 6] is **DENIED**;

13


(2) Defendant's Motion for Summary Judgment [R. 7] is **GRANTED;**

(3) **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 22nd day of September, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

14